IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NADINE AVICOLLI,** *et al.* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 21-1119** |
| | : | |
| **BJ'S WHOLESALE CLUB, INC.,** *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                              **March 22, 2021**

Pennsylvanians claiming injury from a defective product often sue the product's manufacturer, distributor, and seller in state court. When they sue entities involved in the defective product's chain of commerce who are non-Pennsylvanians, they try to avoid the non-Pennsylvania defendants' removal from state court to our Court based on complete diversity by suing a Pennsylvania manager or employee of a local store causing injury. This strategy of suing a Pennsylvania manager or employee may be successful in a personal injury slip and fall or fraud case when the injured Pennsylvanian can truthfully allege some active misfeasance in the conduct causing harm. But this strategy is not readily available when the injured Pennsylvanian claims the product as manufactured, distributed, and sold is defective and cannot allege the Pennsylvania store manager participated in its manufacture, distribution, or sale. The non-Pennsylvania seller can properly remove the case to our Court arguing the injured Pennsylvanians improperly sued the Pennsylvania store manager in state court to defeat our jurisdiction since they do not allege he participated in the alleged conduct. And, as we face today, the injured parties can then move to remand back to state court. After studying conclusory allegations against the store manager, we deny the motion to remand finding the injured Pennsylvanians do not allege the local store manager played an active role in the alleged injury.

I.      **Alleged facts**

Pennsylvanian Dennis Avicolli purchased a seventeen-ounce bottle of Blumen Clear Advanced Hand Sanitizer – manufactured by 4E Global Sapi De CV ("4E Global") and distributed by 4E Brands North America ("4E Brands") – from a BJ's Wholesale store in Springfield, Pennsylvania in May 2020.[1] Two months after Mr. Avicolli's purchase, 4E Brands recalled ten bottle sizes of its hand sanitizers, including the seventeen-ounce bottle, because the product contained methanol.[2] BJ's issued a press release two days later, stating it only sold one product, the seventeen-ounce bottle of hand sanitizer, affected by the recall.[3] Nadine Avicolli, Mr. Avicolli's wife, ingested the hand sanitizer her husband purchased one month after the recall.[4] She lost a substantial amount of her vision and strength on her left side.[5] Mr. and Mrs. Avicolli did not know of the recall.[6]

Mr. and Mrs. Avicolli sued the seller BJ's and the manufacturer and distributor 4E Brands, and 4E Global in the Court of Common Pleas for Philadelphia County alleging negligence, strict liability, breach of warranty, unfair trade practices, and loss of consortium against the seller BJ's and manufacturer.[7] The Avicollis are Pennsylvania citizens.[8] BJ's is a citizen of Delaware and Massachusetts, 4E Brands is a citizen of Texas, and 4E Global is a citizen of Mexico.[9] These named parties are of completely diverse citizenship.

But the Avicollis also sued the local BJ's store manager Scott Barber who is a Pennsylvania citizen alleging:

- Failure to distribute, market and sell the Blumen Clear Advanced Hand Sanitizer with adequate safety features to protect persons using the product;

- Failure to distribute, market and sell the Blumen Clear Advanced Hand Sanitizer with adequate provisions and/or components to prevent foreseeable harm;

- Failure to provide adequate warnings or instructions with regard to the Blumen Clear Advanced Hand Sanitizer;

2

…
- Distributing, marketing, and selling a product with a label that its active ingredient is seventy percent (70%) ethyl alcohol without any mention of the presence of methanol (wood alcohol);

- Distributing, marketing, and selling a product with a label that it contains seventy percent (70%) alcohol;

- Distributing, marketing, and selling a product without warning of the hazards of ingesting its alcohol-based product;
…
- Allowing a condition to exist that could and did cause the Blumen Clear Advanced Hand Sanitizer to cause serious bodily injury; [and]
…
Including a dangerous substance in the hand sanitizer[.][10]

The Avicollis allege his employer BJ's did the same things. BJ's removed the case notwithstanding Store Manager Barber's Pennsylvania citizenship arguing, in part, we have subject matter jurisdiction based on diversity of citizenship because the Avicollis improperly joined Store Manager Barber to defeat complete diversity. BJ's swore its agent Store Manager Barber consented to the removal.

**II.    Analysis**

The Avicollis now move to remand arguing BJ's fails to meet its high burden to establish they improperly joined Store Manager Barber.[11] They argue they have a colorable claim against Store Manager Barber for negligence based on the participation theory under which employees may be held liable for torts committed by their corporate employer.[12] They further argue BJ's defectively removed.[13] We studied the allegations. We disagree with the Avicollis and deny remand.

**A.    The Avicollis improperly joined Store Manager Barber.**

The Avicollis sue the manufacturer and seller of an allegedly defective product. They also sued the store manager of the BJ's store in Pennsylvania for the same conduct even though he does

3

not manufacture or sell the allegedly defective product. BJ's argues the Avicollis sued Store Manager Barber without alleging any personal participation in the manufacturing or selling the defective product solely to destroy a federal court's limited diversity jurisdiction. The Avicollis do not allege a single fact allowing us to infer his personal misfeasance necessary to impose personal liability for an employer entity's torts.

"The doctrine of fraudulent joinder represents an exception to the requirement that removal be predicated solely upon complete diversity."[14] Fraudulent, or improper, joinder of a non-diverse defendant occurs where (1) "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant" *or* (2) "no real intention in good faith to prosecute the action against the defendant or seek a joint judgment."[15] "A claim is colorable so long as it is not 'wholly insubstantial and frivolous.'"[16] The focus should not be on whether the plaintiff has stated a claim sufficient to withstand a Rule 12(b)(6) motion to dismiss, but instead whether there a "possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants."[17] Our Court of Appeals imposes a "heavy burden of persuasion" on a defendant claiming improper joinder.[18]

To determine whether a party has been improperly joined, we "must accept any well-pleaded allegations as true" and resolve any uncertainties in the controlling law in the plaintiff's favor.[19] We may also "take a limited look beyond the pleadings to consider 'reliable evidence' proffered by the defendant to support the removal."[20] If we determine a non-diverse defendant has been improperly joined, we may disregard them for jurisdictional purposes and "assume jurisdiction over a case, dismiss the non[-]diverse defendant[], and thereby retain jurisdiction."[21]

The Avicollis argue they allege colorable claims against Store Manager Barber under Pennsylvania's participation theory. In Pennsylvania, "employees of a corporation are liable for

4

their own torts, even if they were acting within the scope of their employment when they engaged in the tortious conduct in question."[22] Under the participation theory, a corporate officer, employee, or other agent "who takes part in the commission of a tort by the corporation is personally liable therefor."[23] Corporate employees can accordingly be held personally liable if they "participate[d] in the wrongful acts."[24] Pennsylvania courts have interpreted this requirement to allow liability against employees for negligent and intentional misfeasance.[25] Employees cannot, however, be held liable for nonfeasance.[26]

Courts in this Circuit have held plaintiffs did not improperly join corporate employees where the claims are based in part on the employees' alleged affirmative misrepresentations.[27] In *Hricik v. Stryker Biotech, LLC*, for example, Chief Judge Sánchez concluded sales representatives for a medical device manufacturer had not been improperly joined in an action for negligence, breach of express warranty, and fraud because the representatives allegedly promoted a defective device to a surgeon who relied on the sales representatives' statements to install the device in the plaintiff's spine.[28] Chief Judge Sánchez found it significant the complaint "connect[ed] [the sales representatives] to these misrepresentations, . . . identifie[d] [plaintiff's] surgeon as a recipient of the misrepresentations," and claimed the sales representatives made the misrepresentations to induce plaintiff's surgeon and hospital staff to use the defective device.[29] He found the plaintiff's claims colorable because they were not based solely on a failure to warn the surgeon, but rather on their affirmative representations that the device was safe and effective when they knew or should have known otherwise.[30]

Courts have similarly found colorable tort claims against employees who actively participate in creating a risk leading to injuries arising from conditions in the store.[31] In *Ahearn v. BJ's Wholesale Club*, for example, Judge Goldberg held the plaintiff properly joined a BJ's store

manager in a slip-and-fall case because the complaint alleged the manager "affirmatively acted" by training store employees, creating a hazardous condition, and placing [p]laintiff in harm's way.[32] Judge Goldberg further found the store manager's swearing he did not work on the day of the accident, insufficient to "completely separate" the store manager from the allegations since he could have improperly performed his duties of safety and training regardless of his presence on the day of the accident.[33] Judge Pratter in *Gardler v. Wal-Mart Stores* likewise found a plaintiff alleged colorable claims against a store manager in a slip-and-fall case where he alleged, among other things, the manager caused the hazardous condition because he had the sole responsibility for placement of the rug that caused the accident.[34]

Consistent with this reasoning, Judge Padova in *Gaynor v. Marriott Hotel Services* held a plaintiff alleged a colorable negligence claim against a hotel manager after she tripped and fell on a sidewalk adjacent to the hotel.[35] Judge Padova found, despite not having explicitly alleged the manager's personal participation in the incident, the complaint – which alleged, among other things, the manager caused the defective condition on the sidewalk, failed to properly and/or adequately inspect, maintain, and service the premises, and negligently hired individuals known to not be properly trained in real estate maintenance – was sufficient to *infer* such personal participation.[36]

The Avicollis attempt to analogize to this line of cases, arguing their allegations similarly allow a reasonable inference of Store Manager Barber's personal participation in the tortious conduct.[37] We disagree. The complaints in *Ahearn* and *Gardler* included well-plead allegations of the managers personally responsible for preventing the hazardous conditions leading to the plaintiffs' injuries. Thus, regardless of the managers' presence on the day of the injury, it was reasonable to infer the managers acted improperly – rather than simply failing to act – in carrying

6

out their duties. In contrast, the Avicollis do not plead Store Manager Barber himself had any responsibility or authority whatsoever in manufacturing, distributing, marketing, or selling this hand sanitizer and his negligence could have potentially led to Mrs. Avicolli's injuries. The Avicollis instead include boilerplate allegations he "distribut[ed], market[ed], and s[old]" the defective hand sanitizer, which were merely copied from the allegations against BJ's generally. These boilerplate allegations do not suggest misfeasance by Store Manager Barber. Unlike in *Gaynor*, where Judge Padova could reasonably infer a hotel manager personally participated in causing a woman to injure herself on a sidewalk near the hotel, there is no reasonable basis from which we can infer Store Manager Barber somehow personally participated in this chain of events. While we are required to accept well-plead allegations as true, we are not required to blindly accept conclusory allegations which attempt to attach responsibility to a store manager in a products liability action.

Products liability claims like the ones brought by the Avicollis are different than slip and fall or employee fraud claims. Judge Pratter's decision denying remand in *Arndt v. Johnson & Johnson* is instructive.[38] The plaintiff – whose son had died after taking a dose of later recalled medication – sued, among others, individual officers of the company that manufactured the medication.[39] Judge Pratter held the mother improperly joined the manufacturer's officers in claims for strict liability and negligence because – as in this case – "nowhere does the [c]omplaint contain allegations suggesting that any of the individual defendants were directly involved in the manufacture or distribution of the [medication]."[40] Judge Pratter found most of the allegations against the individual officers – including, among other things, they substantially reduced resources for quality control, failed to address quality control warnings from the Food and Drug Administration, dismantled corporate compliance groups, and continued to ship products despite

7

knowledge of their defects – "conjure up classic nonfeasance" because they primarily claimed the officers failed to act in a way which would have prevented the drugs from being sold.[41] Judge Pratter further found any potential allegations of "active" conduct involved "phantom recalls" of the medication which were not causally connected to the child's death.[42]

In *Moore v. Johnson & Johnson*, Judge McLaughlin held plaintiffs improperly joined business executives in a lawsuit related to the recalled medication also at issue in *Arndt*.[43] Judge McLaughlin found the plaintiffs failed to allege colorable claims against the executives by claiming they "had personal knowledge of" the poor conditions at the manufacturing plant and were "integrally involved in and responsible for the decisions" leading to the defective medications.[44] Judge McLaughlin explained the plaintiffs' bare assertions failed to state how the executives "specifically directed the particular act" involved in the lawsuit or which of their decisions led to the degradation of quality control leading to the alleged injuries.[45] Judge Kelly in *Sherfey v. Johnson & Johnson* agreed with Judge McLaughlin's reasoning in the products liability context and concluded plaintiffs failed to allege colorable claims against corporate officers based on the same recalled medication because the plaintiffs alleged officers failed to perform their job duties with due care.[46] While the plaintiffs attempted to make some specific allegations of misfeasance against the officers – including that they "insisted on continuing to ship the product for sale to the public" despite knowing of manufacturing defects, "began planning a secret recall of [the medication]," and concealed "from the public the manufacturing problems" related to the medication – Judge Kelly found those allegations "are merely conclusory and offer no specific facts as to the individual liability of each of these [officers]."[47] He further found these allegations failed to show "active and personal participation" in the tortious conduct that harmed the plaintiffs.[48]

8

As in *Arndt*, *Moore*, and *Sherfey*, the Avicollis do not include well-plead allegations Store Manager Barber actively participated in the manufacture or distribution of the hand sanitizer leading to Mrs. Avicolli's injury.[49] As Judge Kelly explained in *Sherfey*, we cannot reasonably infer solely from conclusory allegations Store Manager Barber had any control or involvement whatsoever in choosing which products BJ's sells, let alone in 4E's manufacturing and distribution of the hand sanitizer.  The only specific allegations as to Store Manager Barber amount to nonfeasance because they essentially allege Store Manager Barber should have taken action to prevent the Avicollis from purchasing or later ingesting the hand sanitizer.

There is no possibility whatsoever that a state court could find the participation theory applies to attach personal liability to Store Manager Barber under these plead facts. The Avicollis do not have a colorable claim against Store Manager Barber in their products liability action simply because he is the store manager of this BJ's store.  The Avicollis improperly joined Store Manager Barber, who should not be a party based on these conclusory allegations and must be dismissed allowing us to enjoy subject matter jurisdiction based on complete diversity. [50]

**B.      BJ's removal is not procedurally defective.**

The Avicollis next argue we should remand because (1) while BJ's noted that Store Manager Barber consented to the removal in the Notice of Removal, Store Manager Barber did not file a separate joinder, and (2) 4E Brands and 4E Global have not joined in the removal.[51] We disagree. Absent controlling law to the contrary, a co-defendant need not consent to a removal in a separate filing. We also find BJ's does not need the consent of 4E Brands and 4E Global because the Avicollis have not served them yet.

Congress permits BJ's to remove to federal court so long as "all defendants who have been properly joined and served . . . join in or consent to the removal of the action."[52] The plain language

of this statute eliminates the possibility of any defects as to 4E Brands and 4E Global as we have no notice of service upon them. The question then becomes whether a statement in the Notice of Removal of Store Manager Barber's consent to the removal is sufficient. There is a circuit split on this issue: the Courts of Appeals for the Second, Seventh, and Fifth Circuits have held a defendant may not verify consent to removal on behalf of co-defendants while the Courts of Appeals for the Fourth, Sixth, Eighth, and Ninth Circuits have held the opposite. The Supreme Court and our Court of Appeals have not yet ruled on the issue.

Judge Schiller recently held, noting the split among circuit courts and among judges in our District, a single defendant can attest to the consent of all other defendants in its notice of removal.[53] Judge Schiller outlined three reasons why Congress did not intend for "consent" to only allow individualized written consent.[54] First, consent in other areas relating to federal jurisdiction – for example, personal jurisdiction – can be evidenced by means other than written notice.[55] Second, Congress did not specify a form of consent here even though it has elsewhere; Federal Rule 73, for example, specifies how a party may consent to trial by a magistrate judge.[56] Finally, Congress specifies the form and time frame for the notice of removal and could have specified similarly for consent but chose not to.[57]

Judges who have conversely held a defendant cannot consent to removal on behalf of co-defendants have primarily based their decisions on our Court of Appeals' instruction that "the removal statute should be strictly construed and all doubts resolved in favor of remand."[58] Chief Judge Conti in *Baldy v. First Niagara Pavilion, C.C.R.L., LLC*, for example, found a removal procedurally defective where the notice of removal stated that the nonmoving defendants "did not object" to the removal.[59] Judge Conti found persuasive the reasoning – adopted by other district courts and the Courts of Appeals for the Second, Fifth, and Seventh Circuits – a defendant cannot

properly verify co-defendants' consent to removal and explained, even if he held otherwise, the removal would be defective because it only stated the co-defendants *did not object* to the removal rather than affirmatively stating their consent.[60]

We agree with Judge Schiller's interpretation of the statutory language and conclude such an interpretation "does not run counter to a strict construction of the removal statute, because the statute is silent regarding the form of consent."[61] And unlike in *Baldy*, the notice of removal affirmatively represents Store Manager Barber's consent to the removal. We therefore conclude the removal was not procedurally defective.

### III.  Conclusion

The Avicollis do not plead Store Manager Barber's misfeasance allowing us to find his active participation in seller BJ's, the manufacturer's, and the distributor's alleged tortious conduct. The Avicollis improperly joined Store Manager Barber based on conclusory allegations. We dismiss Store Manager Barber without prejudice and retain diversity jurisdiction over the remaining claims against BJ's. We may also proceed against 4E Brands and 4E Global once the Avicollis confirm service. BJ's met the procedural requirements for removal. We enjoy subject matter jurisdiction over the completely diverse parties properly joined.

---

[1] ECF Doc. No. 1-1 ¶¶ 14-17.

[2] *Id.* ¶¶ 18, 20. The Avicollis allege exposure to methanol may cause adverse side effects, such as "nausea, vomiting, headache, blurred vision, permanent blindness, seizures, coma, permanent damage to the nervous system, or death." *Id.* ¶ 21

[3] *Id.* ¶¶ 23, 25.

[4] *Id.* ¶ 31.

---

[5] ECF Doc. No. 1-1 ¶ 32.

[6] *Id.* ¶¶ 24, 27.

[7] *See generally* ECF Doc. No. 1-1.

[8] *Id.* ¶¶ 1-2, 7.

[9] *Id.* ¶¶ 4, 9, 12.

[10] *Id.* ¶ 135.

[11] ECF Doc. No. 4 at 9-22.

[12] *Id.*

[13] *Id.* at 22-23.

[14] *In re Briscoe*, 448 F.3d 201, 215-16 (3d Cir. 2006).

[15] *Abels v. State Farm Fire & Case. Co.*, 770 F.2d 26, 32 (3d Cir. 1985) (emphasis added).

[16] *Aldorasi v. Crossroads Hosp. & Mgmt. Co., LLC*, 344 F. Supp. 3d 814, 820 (E.D. Pa. 2018) (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851-52 (3d Cir. 1992)).

[17] *Id.* (quoting *Batoff*, 977 F.2d at 851-52).

[18] *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1012 n.6 (3d Cir. 1987)).

[19] *Briscoe*, 448 F.3d at 219-20.

[20] *Aldorasi*, 344 F. Supp. 3d at 821 (citing *Briscoe*, 448 F.3d at 219-20).

[21] *Briscoe*, 448 F.3d at 216 (citations and quotations omitted).

[22] *Hricik v. Stryker Biotech, LLC*, 89 F. Supp. 3d 694, 700 (E.D. Pa. 2015).

[23] *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 90 (Pa. 1983).

[24] *Id.*

[25] *Hricik*, 89 F. Supp. 3d at 701.

[26] *Id.*

[27] *See, e.g., Boyer*, 913 F.2d at 111-13.

---

[28] *Hricik*, 89 F. Supp. 3d at 705.

[29] *Id.* at 702-03.

[30] *Id.* at 704-05.

[31] *See Gardler v. Wal-Mart Stores, Inc.*, No. 18-4689, 2019 WL 2489691, at *5-6 (E.D. Pa. June 12, 2019).

[32] *See Ahearn v. BJ's Wholesale Club, Inc.*, No. 19-3012, 2020 WL 1308216, at *4 (E.D. Pa. Mar. 18, 2020).

[33] *Id.*

[34] *Gardler*, 2019 WL 2489691 at *6; *see also C.S. ex rel. Surman v. Target Corp.*, No. 11-244, 2011 WL 915957, at *7 (W.D. Pa. Mar. 16, 2011) (remanding case because employees who allegedly placed a product in a certain location and failed to warn customers of the dangers posed by the product could be liable for negligence).

[35] No. 13-3607, 2013 WL 4079652, at *3-5 (E.D. Pa. Aug. 13, 2013).

[36] *Id.* at *4. In contrast to *Ahearn*, *Gardler*, and *Gaynor*, we found the plaintiff in *Kane v. Wal-Mart Stores East, LP* failed to allege colorable claims against a store manager in the slip and fall context. *See* No. 18-5285, 2018 WL 6840154, at *5 (E.D. Pa. Dec. 31, 2018). In *Kane*, the plaintiff specifically failed to plead misfeasance by the store manager, knowledge – or at least a reason to know – of a particular risk of a slip and fall risk in the store, or failure to train employees on prompt clean up. *Id.*

[37] ECF Doc. No. 4 at 11-19.

[38] No. 12-6633, 2014 WL 882777, at *6-8 (E.D. Pa. Mar. 6, 2014).

[39] *Id.* at *1.

[40] *Id.* at *7. Judge Leeson's conclusion the plaintiff could proceed against individual employees in *Ramos v. Wal-Mart Stores* is distinguishable from the Avicollis' claim and *Arndt*. 202 F. Supp. 3d 457, 462-64 (E.D. Pa. 2016). The plaintiff in *Ramos* sued Wal-Mart employees for negligently selling a gun to an intoxicated twenty-year-old who ended up shooting multiple people. *Id.* at 460-61. Judge Leeson concluded there were colorable claims against the employees because the plaintiff alleged the employees "sold handgun ammunition to [the twenty-year old]" and were "directly involved in the . . . sale." *Id.* at 462-63. Even assuming the employees were not personally involved in the sale, the plaintiff alternatively alleged the employees were liable for failing to properly train the cashier who did conduct the transaction. *Id.* at 463-64. The Avicollis offer no such facts.

[41] *Arndt*, 2014 WL 882777 at *7.

---

[42] *Id.*

[43] *Moore v. Johnson & Johnson*, 907 F. Supp. 2d 646, 663-64 (E.D. Pa. 2012).

[44] *Id.*

[45] *Id.*

[46] No. 12-4162, 2014 WL 715518, at *8-11 (E.D. Pa. Jan. 29, 2014).

[47] *Id.* at *11.

[48] *Id.*; *see also Schmidt v. International Playthings, LLC,* No. 19-0933, 2020 WL 7024252, at *40 (D.N.M. Nov. 30, 2020) (concluding plaintiffs failed to allege a colorable negligence claim against a store manager for injuries relating to a defective product because "market[ing], merchandis[ing], and sell[ing] an allegedly defective product does not…fall under the ambit of maintaining a safe store premises, unless the defective product somehow caused the injury at the store, which [plaintiffs] do not allege") (citations and quotations omitted).

[49] BJ's attached affidavits from Store Manager Barber and a BJ's "Category Merchant" to its Notice of Removal. ECF Doc. Nos. 1-2, 1-3. The affidavits essentially swear BJ's store managers have no decision-making authority as to the manufacture, distribution, and sale of products at BJ's stores. *See id.* We may take a limited look beyond the pleadings and consider affidavits when they present "undisputed facts that establish 'with complete certainty' that the non-diverse defendant has no liability." *Gaynor*, 2013 WL 4079652, at *4-5 (quoting *Yellen v. Teledne Cont'l Motors, Inc.*, 832 F. Supp. 2d 490, 504 (E.D. Pa. 2011)). These affidavits do not present such evidence and we did not consider them. *Id.* at *5 (declining to consider store manager's affidavit which contradicted the allegations in the complaint).

[50] Our dismissal of Store Manager Barber moots his Motion to dismiss. ECF Doc. No. 2.

[51] ECF Doc. No. 4 at 22-23. The Notice of Removal states "[Mr.] Barber consents to the removal of this action. Upon information and belief, [4E Brands] and 4E Global have not been served and, therefore, their consent is not required." ECF Doc. No. 1 ¶ 52.

[52] 28 U.S.C. § 1446(b)(2)(A).

[53] *McCreesh v. Philadelphia*, No. 20-3002, 2020 WL 5017609, at *2-3 (E.D. Pa. Aug. 25, 2020).

[54] *Id.*

[55] *Id.* at *2.

[56] *Id.* at *3.

[57] *Id.*

[58] *See, e.g.*, *A.R. v. Norris*, No. 15-1780, 2015 WL 6951872, at *3 (M.D. Pa. Nov. 10, 2015) (citing *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985)).

[59] 149 F. Supp. 3d 551, 560-63 (W.D. Pa. 2015).

[60] *Id.*

[61] *McCreesh*, 2020 WL 5017609 at *3 (citation omitted).