#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NADINE AVICOLLI,** *et al.* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 21-1119** |
| | : | |
| **BJ'S WHOLESALE CLUB, INC.,** *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                       June 16, 2021

A husband and wife allege injury caused by a product purchased at a BJ's Wholesale Club in Delaware County but manufactured in Mexico City by a Mexican company. The Mexican manufacturer did not sell the product to BJ's. It sells products to a middleman Texas limited liability company with related managers which then sells the products to retailers like BJ's. The Mexican manufacturer moves to dismiss arguing we lack personal jurisdiction over it. We granted the parties expedited jurisdictional discovery. The husband and wife are proceeding in discovery against BJ's but have not adduced evidence allowing us to exercise personal jurisdiction over the Mexican manufacturer under either general or specific jurisdiction theories. The Mexican manufacturer is not "at home" here. The Mexican manufacturer cannot be subject to our personal jurisdiction just because it has a contractual relationship with a Texas company which, in turn, sells its products in the United States including to BJ's. The husband and wife do not adduce evidence of an alter ego relationship between the Mexico manufacturer and Texas distributor warranting an exercise of equitable piercing of corporate protections. We further decline to adopt a stream of commerce theory to find specific jurisdiction over the Mexican manufacturer. We dismiss the Mexican manufacturer without prejudice.

**I.       Facts adduced in jurisdictional discovery.**

Dennis Avicolli purchased a seventeen-ounce bottle of Blumen Clear Advanced Hand Sanitizer from a local BJ's Wholesale Club in May 2020.[1] The foreign manufacturer of the hand sanitizer - 4E Global SAPI de CV ("4E Global") – subsequently recalled all of its seventeen-ounce bottles because they contained methanol or wood alcohol.[2] Mr. Avicolli's wife, Nadine Avicolli, allegedly sustained injuries after she "ingested" some of the hand sanitizer.[3] The Avicollis sued BJs, 4E Global, and the regional distributor of the hand sanitizer, 4E Brands North America ("4E Brands"), alleging product defect, lack of warning labels, and negligence.[4]

### *4E Global*

4E Global is a business entity formed in Mexico with a principal place of business in Mexico.[5] 4E Global manufactures hand sanitizers, hand soaps, and personal hair care products in Mexico City.[6] 4E Brands then purchases these products and 4E Global exports them to 4E Brands' Texas facility.[7] Over thirty-one million units of 4E Global products have been sold in the United States.[8] 4E Global is responsible for ensuring its products and labels comply with state and federal law.[9] 4E Global also decides whether to issue a recall of its products.[10]

Juan Carlos González Olvera works as 4E Global's marketing and product development director and previously served as its operations director.[11] Juan Carlos's brother, Jorge González Olvera, also serves as a director of 4E Global.[12]

### *4E Brands*

4E Brands is a limited liability company formed in Texas with a principal place of business in Texas.[13] 4E Brands is a wholly-owned subsidiary of 4E Global.[14] 4E Brands' registered managers – Jorge and Juan Carlos – are citizens of Mexico.[15]

Jorge and Juan Carlos created 4E Brands around 2016, in part, to distribute 4E Global's products in the United States.[16] They created 4E Brands specifically to sell 4E Global's products to Dollar Tree in Virginia.[17] 4E Brands continued to sell to Dollar Tree until February or March 2020.[18] 4E Brands has also sold products to several companies including BJ's, Costco Wholesale Corporation, and Sam's Club in the past five years.[19]

Juan Carlos served as 4E Brands' vice president since its creation and works for 4E Brands remotely from Mexico.[20] 4E Global did not impose restrictions or limitations on 4E Brands with respect to the states in which it sells 4E Global's products.[21] 4E Brands has only sold 4E Global's products although Juan Carlos testified 4E Brands has been looking for other suppliers.[22] 4E Brands does not have a retail store.[23] 4E Brands does not manufacture products but conducts market research into products like shampoos and soaps.[24] 4E Brands and 4E Global use similar logos.[25] 4E Brands shipped 141,240 units of 4E Global products to Pennsylvania.[26]

### *BJ's relationship with 4E Global and 4E Brands*

BJ's swore it has not entered into contracts or supply agreements with 4E Global.[27] BJ's instead purchased 4E Global's products from 4E Brands by purchase order invoices.[28] 4E Brands then shipped the products to a BJ's facility in Laredo, Texas.[29] 4E Brands has sold over two million units of hand sanitizer to BJ's.[30]

BJ's delivered the products from the Texas facility to its retail locations.[31] BJ's operates seventeen retail clubs in Pennsylvania.[32] BJ's sold Blumen hand sanitizer at each of these seventeen locations for some period.[33] BJ's sold Blumen hand sanitizer in 46,919 transactions in its Pennsylvania clubs.[34]

Juan Carlos – on behalf of 4E Brands – signed an agreement with BJ's titled "Re: Electronic Transmission of Purchase Orders."[35] 4E Brands and BJ's agreed to submit purchase orders using

electronic data interchange.[36] Juan Carlos provided two email addresses on the agreement: mrodriguez@4eglobal.com and jpallores@4eglobal.com.[37]

**II.     Analysis**

4E Global moves to dismiss claims against it. It argues we lack personal jurisdiction over it because (1) it is not "at home" in Pennsylvania and (2) it has not deliberately targeted Pennsylvania.[38] We allowed the Avicollis to conduct jurisdictional discovery. The Avicollis argue following discovery we have specific jurisdiction over 4E Global through 4E Brands' contacts with Pennsylvania under an alter ego theory.[39] They also argue we have general jurisdiction over 4E Global because it has sold millions of products in the United States, including hundreds of thousands in Pennsylvania.[40]

Federal Rule of Civil Procedure 4(k) allows a federal court to exercise personal jurisdiction over a non-resident defendant to the extent provided by the law of the state in which the federal court sits.[41] We look to Pennsylvania's long-arm statute, which allows courts in Pennsylvania to assert personal jurisdiction over non-resident defendants "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."[42] The Due Process Clause of the Constitution, in turn, requires non-resident defendants "have certain minimum contacts with [Pennsylvania] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice."[43]

If a defendant challenges the exercise of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating personal jurisdiction exists.[44] The plaintiff cannot rest on his pleadings alone and must instead present affidavits or other competent evidence of sufficient contact with the forum state.[45] "Such contacts must be established

with 'reasonable particularity,' but need only amount to a prima facie case in favor of personal jurisdiction."[46] If the plaintiff meets this burden, the defendant must then establish the presence of other considerations that would render jurisdiction unreasonable.[47]

We must have either specific or general jurisdiction over a defendant to exercise personal jurisdiction. We may assert general jurisdiction over non-resident corporations "to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."[48] Specific jurisdiction, on the other hand, "depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."[49]

Our careful review of the pleadings and facts adduced during jurisdictional discovery confirms we may not exercise personal jurisdiction over 4E Global. The Avicollis fail to adduce sufficient evidence demonstrating 4E Global can be considered "at home" in Pennsylvania. And even assuming we may exercise personal jurisdiction over 4E Brands, the Avicollis fail to show 4E Brands acts solely as an alter ego of 4E Global.

### A.    We lack general jurisdiction over 4E Global.

The Avicollis contend we have general jurisdiction over 4E Global because it has sold millions of units throughout the United States (including in Pennsylvania), delivered units into Pennsylvania, and sold units to many other retailers with a "significant presence" in Pennsylvania. 4E Global argues we cannot exercise general jurisdiction because it does not have any presence in Pennsylvania, nor does it ship any products to Pennsylvania. We agree with 4E Global.

The general jurisdiction analysis "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide."[50] General jurisdiction can be established in places other than

the corporation's place of incorporation or its principal place of business, but requires more than a showing of continuous and systematic course of business in the forum State.[51] To state it differently, "[a] corporation is not 'at home' in 'every state in which it engages in a substantial, continuous, and systematic course of business.'"[52] A plaintiff must instead adduce evidence the defendant's activity within the forum State reaches a "near-principal-place-of-business, essentially-at-home level of activity."[53]

The Avicollis have not adduced sufficient evidence to demonstrate 4E Global is essentially "at home" in Pennsylvania. 4E Global, a Mexican company with its principal place of business in Mexico, manufactures all its products in a Mexico City facility. There is no evidence 4E Global has employees or offices in Pennsylvania. 4E Global does not directly ship its products into Pennsylvania; the evidence shows it instead ships products only to 4E Brands' distribution center in Texas. There is no evidence 4E Global maintains bank accounts or other assets in Pennsylvania. We cannot assert general jurisdiction solely based on the fact some of 4E Global's products end up in Pennsylvania through intermediary distributors. To do so would subject 4E Global to general jurisdiction in numerous states.[54]

Judge Beetlestone's opinion in *Farber v. Tennant Truck Lines, Inc.* is instructive. In *Farber*, an Illinois-based defendant, a multistate shipping corporation, moved for dismissal of a case arising from an Illinois car accident for lack of general personal jurisdiction.[55] The plaintiff adduced evidence the defendant, among other things, (1) completed over 4,600 deliveries and pick-ups in Pennsylvania in a four-year period; (2) maintained employees based in Pennsylvania; (3) permitted those Pennsylvania employees to garage company vehicles in Pennsylvania during their home time; and (4) paid Pennsylvania state withholding and corporate taxes.[56] Judge Beetlestone concluded these contacts insufficient to confer general jurisdiction over the defendant because the

6

plaintiffs failed to demonstrate the defendant "was any more active in Pennsylvania than any other state in which it delivers cargo" and "[m]ere deliveries in Pennsylvania, even occurring at regular intervals, are insufficient."[57] Judge Beetlestone explained if we had general jurisdiction over the defendant merely based on its revenue, number of pick-ups and drop-offs, and amount of highway travel within the state, the defendant "or, indeed, any company . . . with a multistate business presence . . . would potentially be subject to general, all-purpose jurisdiction in several states."[58]

The Avicollis adduced even less evidence of 4E Global's contacts with Pennsylvania than Judge Beetlestone reviewed in *Farber*. There is no evidence 4E Global shipped any products to Pennsylvania, advertised its products in Pennsylvania, or otherwise maintained a presence – whether through offices or employees – in Pennsylvania. We accordingly conclude we lack general jurisdiction over 4E Global.

### B. We lack specific jurisdiction over 4E Global.

The Avicollis claim we may assert specific jurisdiction over 4E Global because 4E Brands, its "captive and wholly-owned subsidiary," deliberately targeted Pennsylvania through, among other things, direct shipments of products into Pennsylvania. They argue we can, in turn, assert specific jurisdiction over 4E Global because 4E Brands is essentially an alter ego of 4E Global.

4E Brands has not yet answered the Complaint. We therefore assume, solely for purposes of this argument, we may assert specific jurisdiction over 4E Brands.[59] Even assuming this fact, we conclude we lack specific jurisdiction over 4E Global because the Avicollis have not adduced sufficient evidence 4E Brands is the alter ego of 4E Global.

> 1. **The Avicollis did not demonstrate 4E Brands is an alter ego of 4E Global.**

The Avicollis argue 4E Brands is merely an agent, or alter ego, of 4E Global. The Avicollis adduced evidence:

- 4E Brands is wholly owned by 4E Global;

- 4E Brands and 4E Global share common management;

- 4E Brands and 4E Global utilize similar logos;

- 4E Brands' representatives listed email addresses with 4E Global email addresses on a contract with BJ's

- 4E Brands currently solely purchases – and distributes – 4E Global products;

- 4E Brands does not have any retail stores;

- 4E Brands and 4E Global produced the same corporate designee, Juan Carlos;

- 4E Global made the decision for 4E Brands to issue a recall; and

- 4E Global oversaw products distributed by 4E Brands complied with states' laws.

4E Global argues the Avicollis merely demonstrate 4E Brands and 4E Global have a normal parent-subsidiary relationship, which is insufficient under an alter ego theory. We agree with 4E Global.

A court may exercise personal jurisdiction over a parent corporation through its personal jurisdiction over a subsidiary through the alter ego theory.[60] Under this theory, "if a subsidiary is 'merely the agent' of its parent corporation or the parent corporation 'controls' the subsidiary, 'then personal jurisdiction exists over the parent whenever personal jurisdiction (whether general or specific) exists over the subsidiary.'"[61] Courts in this District typically analyze the following ten factors to determine whether a subsidiary is an agent or alter ego of its parent corporation:

> (1) ownership of all or most of the stock of the subsidiary, (2) common officers and directors, (3) a common marketing image, (4) common use of a trademark

> or logo, (5) common use of employees, (6) an integrated sales system, (7) interchange of managerial and supervisory personnel, (8) subsidiary performing business functions which the principal corporation would normally conduct through its own agents or departments, (9) subsidiary acting as marketing arm of the principal corporation, or as an exclusive distributor, and (10) receipt by officers of the related corporation of instruction from the principal corporation.[62]

"Ultimately, a plaintiff must show that a parent company is operating the 'day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent.'"[63]

A plaintiff cannot show a subsidiary is an alter ego of its parent company by solely demonstrating the subsidiary and parent "operate as a single brand with common corporate control."[64] In *Reynolds v. Turning Point Holding Company*, for example, Judge Wolson concluded a plaintiff did not establish a subsidiary acted as an alter ego of its parent by demonstrating common ownership, common directors and officers, common use of a trademark or logo, and the parent's maintenance of the payroll because "the level of control necessary to substantiate an alter ego relationship must exceed the usual supervision that a parent exercises over a subsidiary."[65] Judge Wolson also explained other factors weighed against finding an alter ego relationship.[66] For example, the entities did not have an integrated sales system, the subsidiaries had their own managerial personnel and staff who controlled day-to-day operations, and there was no evidence any of the entities performed functions for another that the other should ordinarily perform for itself or acted as a marketing arm for a principal corporation.[67]

Judge Conti in *In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation* similarly found a subsidiary was not an alter ego of its parent company where the evidence demonstrated (1) the entities shared directors; (2) the parent owned 100% of the subsidiary's stock; (3) the parent made recommendations of best practices to the subsidiary; (4) the entities used a common marketing image and trademarked logos; and (5) the entities used an

integrated sales system and the subsidiary used its parent's Information Technology and Human Resources departments.[68] Judge Conti explained this evidence "does not reveal the extraordinary level of control of . . . parent over [subsidiary], other than the kind of control associated with parent-subsidiary relationships."[69]

In *Simeone ex rel. Estate of Albert Francis Simeone, Junior v. Bombardier – Rotax GMBH*, Judge Schiller conversely concluded a subsidiary functioned as an alter ego of the parent company where the record indisputably demonstrated, among other things, the parent owned all of the stock of the subsidiary, made all major business decisions for the subsidiary, conducted thorough quarterly reviews of the subsidiary, used a policy manual making apparent it controlled many major functions of the subsidiary (including asset acquisition and disposal, staffing issues, and communications and public relations), held an extensive interest in and authority over the subsidiary's products, and made representations to the public making clear it viewed its subsidiary as a department of itself.[70] Judge Schiller explained the plaintiffs' "lengthy accounting of the ways in which [the parent] dominated [the subsidiary]" demonstrated the parent had a greater level of control over the subsidiary than what is normally associated with common ownership and directorship.[71]

The evidence presented by the Avicollis comes closer to the evidence reviewed by Judges Wolson and Conti than the detailed accounting analyzed by Judge Schiller in *Simeone*. The Avicollis indisputably adduce evidence of common ownership, directorship, and use of logos. They further demonstrate 4E Brands served as 4E Global's exclusive distributor and does not operate retail stores. These facts, however, do not demonstrate a level of control beyond what is normal in a parent-subsidiary relationship and found insufficient in *Reynolds* and *Enterprise*. And while the Avicollis demonstrate 4E Global made the ultimate decision to issue the recall and

10

ensured compliance of its products with applicable laws, they do not adduce evidence 4E Global otherwise dominated or controlled 4E Brands' day-to-day operations like the plaintiffs in *Simeone*. They further fail to demonstrate commingling of finances by showing, for example, 4E Brands and 4E Global maintained the same bank accounts or submitted consolidated financial statements.[72]

In sum, the Avicollis fail to present sufficient evidence "to overcome the presumption that wholly-owned subsidiaries are separate and distinct from their parent companies."[73] We decline to exercise specific jurisdiction over 4E Global based on 4E Brands' alleged contacts with Pennsylvania.

### 2. We cannot exercise specific jurisdiction over 4E Global directly.

4E Global argues we lack specific jurisdiction over it because the Avicollis fail to adduce evidence of any connection whatsoever between Pennsylvania and 4E Global beyond through the stream of commerce and the independent actions of other companies. We agree.

We use a three-part test to determine whether we have specific jurisdiction over a defendant.[74] First, the defendant must have "purposefully directed [its] activities" at the forum.[75] Second, the litigation must "arise out of or relate to" at least one of those activities.[76] And finally, if the first two requirements have been met, we "consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'"[77]

To satisfy the first element, 4E Global must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State."[78] "Physical entrance is not required."[79] The Avicollis must, however, show 4E Global "deliberately 'reached out beyond its home' – by, for example, 'expoi[ting] a market' in the forum State or entering a contractual

relationship centered there."[80] It is insufficient to demonstrate 4E Global's "efforts 'to exploit a national market' that 'necessarily included Pennsylvania.'"[81]

The vitality of the "stream-of-commerce" theory, which essentially contends specific jurisdiction exists over a non-resident defendant who placed goods into the stream of commerce with the knowledge the goods could end up in the forum State, has been in flux for decades. In *Asahi Metal Industry Company, Limited v. Superior Court of California, Solano County*, the Supreme Court in a plurality opinion held "the placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State" and "mere awareness that the stream of commerce may or will sweep the product into the forum State" similarly does not demonstrate purposeful availment in a forum State.[82] The plaintiff must instead adduce evidence of additional conduct which indicates "an intent or purpose to serve the market in the forum State . . . ."[83] For example, evidence the defendant advertises or markets its products in the forum State.[84] Four justices disagreed in a concurring opinion, finding the exercise of personal jurisdiction under the stream-of-commerce theory to be consistent with the Due Process Clause.[85] The Supreme Court in *J. McIntyre Machinery, Limited v. Nicastro* subsequently attempted to clarify the theory, explaining, "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State."[86]

Our Court of Appeals in *Shuker v. Smith & Nephew, PLC* recently declined to adopt the stream-of-commerce theory to exercise specific jurisdiction over the non-resident parent company of a manufacturer, explaining "[a] plurality of Supreme Court Justices has twice rejected [it] . . .."[87] Our Court of Appeals also explained, to the extent the plaintiff sought to establish specific

12

jurisdiction without reference to the stream-of-commerce theory, it failed because the plaintiff only adduced evidence the manufacturer sold its products through its distributor in Pennsylvania "as part of its efforts to sell products in the United States generally – not in Pennsylvania specifically."[88]

We decline to adopt the stream-of-commerce theory consistent with *Shuker*. The Avicollis otherwise fail to demonstrate 4E Global deliberately targeted the Pennsylvania market from which we could infer 4E Global purposefully availed itself of Pennsylvania. As in *Shuker*, the evidence shows 4E Global shipped its products solely to its Texas-based distributor to be sold in the United States and never specifically sought out Pennsylvania. The Avicollis also fail to adduce evidence 4E Global maintains a presence whatsoever in Pennsylvania, advertises its products in Pennsylvania, or otherwise intends to specifically serve Pennsylvania. And BJ's swore it never executed contracts with 4E Global and instead solely dealt with 4E Brands.[89] The Avicollis offer no contrary evidence. [90]

### III. Conclusion

The Avicollis fail to adduce sufficient evidence allowing us to exercise personal jurisdiction over 4E Global at this stage. We grant 4E Global's Motion to dismiss.

---

[1] ECF Doc. No. 1-1 ¶ 15.

[2] *Id.* ¶¶ 18, 20, 26.

[3] *Id.* ¶¶ 31-32.

[4] *See generally id.*

[5] *Id.* ¶ 12.

[6] ECF Doc. No. 43 at 139-40.

[7] *Id.* at 140-41.

---

[8] *Id.* at 174-200.

[9] *Id.* at 166-67.

[10] *Id.* at 162.

[11] *Id.* at 134-35. Juan Carlos served as the corporate designee for both 4E Brands and 4E Global.

[12] *Id.* at 136.

[13] ECF Doc. No. 1-1 ¶ 9.

[14] ECF Doc. No. 43 at 135.

[15] ECF Doc. No. 1 ¶ 18.

[16] ECF Doc. No. 43 at 137.

[17] *Id.* at 144.

[18] *Id.* at 144-45.

[19] *Id.* at 145.

[20] *Id.* at 138, 159.

[21] *Id.* at 145-46.

[22] *Id.* at 148.

[23] *Id.* at 152.

[24] *Id.* at 168.

[25] *Id.* at 169; *Compare* ECF Doc. No. 44-3 at 2 *with* ECF Doc. No. 44-4 at 2.

[26] *Id.* at 210-11.

[27] *Id.* at 206.

[28] *Id.* at 202.

[29] *Id.*

[30] *Id.* at 170.

[31] *Id.* at 202-03.

---

[32] *Id.* at 205.

[33] *Id.*

[34] *Id.*

[35] *Id.* at 220-21.

[36] *Id.* at 220.

[37] *Id.* at 221.

[38] *See* ECF Doc. No. 18-1.

[39] ECF Doc. No. 43 at 12-24.

[40] *Id.* at 24-26.

[41] Fed. R. Civ. P. 4(k)(1)(A).

[42] 42 Pa. Cons. Stat. § 5322(b).

[43] *Reynolds v. Turning Point Holding Co. LLC*, No. 19-01935, 2020 WL 953279, at *2 (E.D. Pa. Feb. 26, 2020) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[44] *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007).

[45] *United Healthcare Services, Inc. v. Cephalon, Inc.*, No. 17-555, 2018 WL 878766, at *1 (E.D. Pa. Feb. 13, 2018) (citing *De Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP*, No. 08-0533, 2008 WL 4822033, at *3 (E.D. Pa. Nov. 4, 2008)).

[46] *Aetna Inc. v. Insys Therapeutics, Inc.*, 324 F. Supp. 3d 541, 550 (E.D. Pa. 2018).

[47] *Id.* (citing *De Lage*, 2008 WL 4822033 at *3).

[48] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[49] *Id.* (citation and quotations omitted).

[50] *Farber v. Tennant Truck Lines, Inc.*, 84 F. Supp. 3d 421, 432 (E.D. Pa. 2015) (quoting *Daimler v. A.G. Bauman*, 571 U.S. 117, 139 n.20 (2014)).

[51] *Daimler*, 571 U.S. 117, 137-39.

[52] *Farber*, 84 F. Supp. 3d at 432 (citations omitted).

---

[53] *Id.* at 433.

[54] *See Rocke v. Pebble Beach Co.*, 541 F. App'x 208, 210-11 (3d Cir. 2013) (affirming the district court's finding it lacked general jurisdiction over a company not incorporated in Pennsylvania, did not maintain any offices or agents there, and did not have an ongoing contractual relationship with Pennsylvania residents).

[55] *Farber*, 84 F. Supp. 3d at 426-27.

[56] *Id.* at 424-25.

[57] *Id.* at 432-33; *see also Barth v. Walt Disney Parks and Resorts U.S., Inc.*, 206 F. Supp. 3d 1026, 1031 (E.D. Pa. 2016) (concluding the court lacked general jurisdiction over companies not incorporated in Pennsylvania, did not maintain principal places of business in Pennsylvania, and did not otherwise have "contacts with Pennsylvania . . . of an exceptional nature rendering them essentially at home").

[58] *Farber*, 84 F. Supp. 3d at 432-33.

[59] 4E Global argues we also lack specific jurisdiction over 4E Brands in its reply brief. We decline to address this argument at this time because 4E Brands has not yet responded to the Complaint.

[60] *Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 470 (E.D. Pa. 2019).

[61] *Id.* (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018)).

[62] *Britax Child Safety, Inc. v. Nuna International B.V.*, 321 F. Supp. 3d 546, 555 (E.D. Pa. 2018) (citing *Oeschle v. Pro-Tech Power, Inc.*, No. 03-6875, 2006 WL 680908, at *5 (E.D. Pa. Mar. 15, 2006)).

[63] *Id.* (quoting *Oeschle*, 2006 WL 680908 at *4).

[64] *See Reynolds,* 2020 WL 953279 at *3-4.

[65] *Id.* at *3 (quoting *Simeone ex rel. Estate of Albert Francis Simeone, Jr. v. Bombardier-Rotax GmbH*, 360 F. Supp. 2d 665, 675 (E.D. Pa. 2005)).

[66] *Id.* at *4.

[67] *Id.*

[68] 735 F. Supp. 2d 277, 322-25 (W.D. Pa. Aug. 13, 2010).

[69] *Id.* at 324.

[70] 360 F. Supp. 2d at 676-78.

[71] *Id.* at 678.

[72] Juan Carlos swore 4E Brands and 4E Global maintained separate bank accounts. *See* ECF Doc. No. 44-2 ¶ 4.

[73] *See Reynolds*, 2020 WL 953279 at *4 (citing *Clark v. Matshushita Elec. Indus. Co.*, 811 F. Supp. 1061, 1067 (M.D. Pa. 1993)).

[74] *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009).

[75] *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

[76] *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *O'Connor*, 496 F.3d at 317).

[77] *Id.* (quoting *Burger King*, 471 U.S. at 476).

[78] *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024-25 (2021) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

[79] *O'Connor,* 496 F.3d at 317 (citations omitted).

[80] *Ford Motor,* 141 S. Ct. at 1025 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

[81] *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (quoting *D'Jamoos*, 566 F.3d at 104).

[82] 480 U.S. 102, 112 (1987).

[83] *Id.*

[84] *Id.*

[85] *Id.* at 117.

[86] 564 U.S. 873, 882 (2011).

[87] 885 F.3d at 780.

[88] *Id.*

[89] Juan Carlos similarly swore 4E Global "is not a signatory of or party to 4E Brands' contracts with its customers." ECF Doc. No. 44-2 ¶ 12.

[90] The Supreme Court's recent opinion in *Ford Motor Company v. Montana Eighth Judicial District Court* does not compel a different conclusion. The Court found – and Ford did not contest – it purposely availed itself of the forum states at issue. *See* 141 S. Ct. at 1023-24, 1026. The

evidence showed Ford advertised its cars in the forum states, sold cars – including the specific models at issue in the underlying cases – to residents of the forum states, and provided residents with ongoing repair, replacement, and recall services. Ford instead focused its arguments on the relationship between those contacts and the underlying lawsuits. *Id.* at 1026-32. We need not reach this relatedness inquiry because, unlike in *Ford Motor*, there is no evidence from which we can find 4E Global purposefully availed itself of Pennsylvania through advertisements, contractual relationships, shipments, or otherwise.