IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NADINE AVICOLLI,** *et al.* | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 21-1119** |
| | : | |
| **BJ'S WHOLESALE CLUB, INC.,** *et al.* | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                                      **August 6, 2021**

A Texas company shipped over 140,000 bottles of allegedly defective hand sanitizer last spring to the Pennsylvania warehouse of the ShopRite supermarket chain serving thirty-one Pennsylvania ShopRite stores and stores in other neighboring states. A Delaware County woman ingested the hand sanitizer purchased from her local BJ's Wholesale Club causing injury which she attributes to the hand sanitizer. Can the injury party force the Texas company to answer these product liability claims against it in Pennsylvania? The company argues it did not purposely direct activities in Pennsylvania and none of the over 140,000 bottles it shipped to the ShopRite warehouse in Pennsylvania caused her injury. Our jurisdictional question today focuses on whether the Texas company's substantial shipments to Pennsylvania evidence purposeful direction of its business into Pennsylvania allowing us to exercise personal jurisdiction. Guided by the Supreme Court's recent analysis involving the sale of allegedly defective Ford cars, and mindful of the distinct nature of distribution to a regional supermarket chain's captive warehouse as opposed to an agnostic distribution center which resells to other distributors and eventually retailers nationwide, we today confirm our exercise of personal jurisdiction over the Texas distributor.

I.      Facts adduced in jurisdictional discovery.

Pennsylvanian Dennis Avicolli purchased a seventeen-ounce bottle of Blumen Clear Advanced hand sanitizer from a local BJ's Wholesale Club in May 2020.[1] The Mexican manufacturer of the hand sanitizer subsequently recalled all its seventeen-ounce bottles because they contained methanol or wood alcohol.[2] Mr. Avicolli's wife, Nadine Avicolli, allegedly sustained injuries after she ingested some of the hand sanitizer.[3] The Avicollis sue BJs and 4E Brands North America, the Texas-based distributor of the hand sanitizer manufactured in Mexico, alleging product defect, lack of warning labels, and negligence.[4]

4E Brands is a limited liability company formed in Texas with a principal place of business in Texas.[5] 4E Brands purchases products from its parent company, 4E Global SAPI de CV ("4E Global"), in Mexico and sells them to its customers, including BJ's and Sam's Club, in the United States.[6] 4E Brands swears it does not have Pennsylvania-based customers.[7] 4E Brands also swears it has never been registered to do business in Pennsylvania, does not maintain offices or employees in Pennsylvania, and does not advertise products in Pennsylvania.[8] 4E Brands appears to require its customers pick up its products from its Texas headquarters.[9]

But we face the exception where 4E Brands knowingly shipped over 140,000 units of hand sanitizer, including seventeen-ounce bottles of Blumen Clear Advanced hand sanitizer, to a warehouse in Breinigsville, Pennsylvania between April and June 2020.[10] 4E Brands shipped this product to Wakefern Food Corporation which paid over one million dollars to 4E Brands for the product.[11] The purchase orders reflecting these shipments bear the logo of ShopRite, a supermarket chain, which operates at least thirty-one retail grocery stores in Pennsylvania.[12] Wakefern is a retailer-owned cooperative consisting of fifty member companies who own and operate 362 retail supermarkets in Pennsylvania and eight other states.[13] There is no evidence Wakefern resells these

products. There is no evidence Wakefern distributes these products to anyone other than its ShopRite supermarkets including its thirty-one stores in Pennsylvania. Wakefern is the customer of 4E Brands just like an individual purchasing the product for delivery to her Pennsylvania home.

4E Brands also sold products to Greenbrier International Inc., a wholly owned subsidiary of Dollar Tree.[14] A Greenbrier employee swears as part of the order fulfillment process, 4E Brands would be made aware of the number of products going to each distribution center, including to a Briar Creek distribution center in Pennsylvania.[15] After receiving orders, 4E Brands organized the products on pallets according to the distribution center destination; pallets would accordingly be specifically identified for Pennsylvania.[16]

## II.    Analysis

4E Brands now moves to dismiss arguing we lack personal jurisdiction over it.[17] It argues it has not purposefully availed itself of doing business in Pennsylvania and, even assuming it has, its Pennsylvania contacts are not sufficiently related to the Avicollis' claims. The Avicollis conducted jurisdictional discovery. The Avicollis now argue we have specific jurisdiction over 4E Brands because it directly shipped products, including the type of hand sanitizer which allegedly led to the Avicollis' injuries, to a Pennsylvania warehouse on multiple occasions. We agree with the Avicollis.

We must have either specific or general jurisdiction over a defendant to exercise personal jurisdiction. We may assert general jurisdiction over non-resident corporations "to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."[18] Specific jurisdiction, on the other hand, "depends on an affiliatio[n] between the forum and the underlying controversy, principally,

activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."[19]

The Avicollis do not contend we have general jurisdiction over 4E Brands so we need only determine if we have specific jurisdiction. We use a three-part test to determine whether we have specific jurisdiction over a non-resident defendant.[20] First, the defendant must have "purposefully directed [its] activities" at the forum.[21] Second, the litigation must "arise out of or relate to" at least one of those activities.[22] And finally, if the first two requirements have been met, we "consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'"[23]

### A. 4E Brands purposefully availed itself of conducting business in Pennsylvania.

4E Brands initially argues it did not purposefully avail itself of conducting business in Pennsylvania because, among other things, it does not advertise in Pennsylvania, does not maintain any sales staff in Pennsylvania, and does not have Pennsylvania-based customers. It further argues its direct shipments to ShopRite's Pennsylvania warehouse do not constitute a deliberate targeting of Pennsylvania because Wakefern Food Corporation – ShopRite's parent company – directed 4E Brands to ship to Pennsylvania. We disagree with 4E Brands in this situation where the customer directs significant shipments of the allegedly defective product to its storage warehouse for use *only* by the customer. The customer here is not an agnostic distribution center; it is the warehouse for thirty-one grocery stores in Pennsylvania as well as its stores in other states.

To demonstrate purposeful availment, "[p]hysical presence in the forum is not required, '[b]ut what is necessary is a deliberate targeting of the forum.'"[24] A defendant is properly subject to jurisdiction in a state where it seeks to serve that state's market.[25] "While 'the absence of direct

sales or shipments into the forum is not dispositive … the presence of direct shipments will show the defendant's purposeful availment.'"[26]

Courts have consistently concluded a defendant who directly ships products to a forum state has purposefully availed itself of doing business in that state. In *Arch Insurance Company v. Technological Investments, LLC*, for example, Judge Leeson concluded defendants' four direct sales of products to Pennsylvania customers constituted sufficient evidence of purposeful availment in Pennsylvania.[27] Judge Leeson rejected the defendants' argument these Pennsylvania sales accounted for less than one percent of its total annual sales.[28] Judge Tucker similarly concluded defendants purposefully availed themselves of conducting business in Pennsylvania by "knowingly ship[ing] their products into Pennsylvania on at least three occasions … for pecuniary gain."[29]

The Avicollis adduced evidence 4E Brands directly shipped over 140,000 units of hand sanitizer, including seventeen-ounce bottles of Blumen Clear Advanced hand sanitizer, to a ShopRite warehouse in Breinigsville, Pennsylvania between April and June 2020.[30] 4E Brands admits it knew about – and coordinated – these Pennsylvania shipments which totaled over one million dollars in sales. These direct shipments of products to the Pennsylvania warehouse of a supermarket chain – which has stores across Pennsylvania – evidences a deliberate targeting of this forum.

4E Brands' unyielding reliance on the reasoning in *M.S. v. Western Power Sports, Inc.* is misguided in extending distinguishable facts to our situation.[31] In *Western Power*, a person injured by an allegedly defective battery manufactured in China sued a variety of persons in the distribution chain. The Chinese manufacturer sold the battery to a defunct Idaho limited liability company which in turn sold the battery to Western Power, which asked the defunct Idaho company

to ship the battery to Western Power's Pennsylvania warehouse. Judge Wiegand explained Western Power's Pennsylvania warehouse was one of six warehouses serving the customer's *nation-wide network of 11,000 distributors*; the product could therefore have been shipped from the warehouse to a variety of unrelated customers in any state. Western Power then sold the battery to a Pennsylvania distributor which in turn sold the battery to a Pennsylvania retailer which in turn sold the battery to the injured party. Judge Wiegand concluded the Idaho company's shipment of a product to Western Power's Pennsylvania warehouse for sale to other distributors did not constitute purposeful availment.

4E Brands conversely shipped the hand sanitizer products directly to a retailer's Pennsylvania warehouse and should have accordingly anticipated the products would have been purchased and used in the retailer's Pennsylvania businesses. This shipment to a Pennsylvania warehouse knowingly servicing its Pennsylvania ShopRite supermarkets (among other ShopRite markets in other states) is distinct from shipments to an agnostic distributor who may sell the products to any number of other distributors, and then to retailers with no Pennsylvania contacts.

The facts presented to Judge Wiegand in *Western Power* are different than those presented to us. But even if we disregard the fact distinctions, we cannot find a basis to distinguish direct shipments to a Pennsylvania end-user from direct shipments to a Pennsylvania warehouse exclusively serving its stores, including at least thirty-one in Pennsylvania. 4E Brands' customer is Wakefern and 4E shipped the product to Wakefern's Pennsylvania warehouse for sale by Wakefern's ShopRite supermarkets, including in Pennsylvania. We are not addressing a distributor's warehouse who looks to resell to any number of unknown nationwide sellers. We cannot find any other authority – nor does 4E Brands cite any – supporting this distinction. This is unlike a scenario in which a manufacturer or distributor simply places its products into the stream

6

of commerce and the products – through the actions of independent parties – end up in Pennsylvania. Or the situation presented in *Western Power* where the Pennsylvania distribution center serves a great variety of unrelated resellers nationwide. We cannot find authority suggesting a business which ships over 140,000 units of the allegedly defective product into the forum state to a warehouse used by only one company to distribute – not resell – to *its* regional supermarkets in Pennsylvania (and nearby states) can somehow claim it is not purposefully availing itself of doing business in Pennsylvania.

4E Brands' argument essentially asks us to find no national distributor of allegedly defective products could ever be subject to specific personal jurisdiction. We find no basis to go there with 4E Brands. A national distributor who chooses to ship substantial quantities of allegedly defective products to a forum state warehouse wholly controlled by a retailer in the forum state purposely avails itself of the forum state. We cannot ignore the nature of product distribution and immunize distributors of direct shipments to a wholly controlled warehouse in Pennsylvania storing inventory for its Pennsylvania supermarkets.[32] National distributors do not drive trucks of its purchased products to each supermarket. The national economy relies upon warehouses serving as distribution channels. We appreciate the difference should the national distributors ship to a distribution center which, in turn, sells to a wide variety of other national distributors as in *Western Power*. But 4E Brands purposefully availed itself of doing business in Pennsylvania by directly shipping its products to the Pennsylvania warehouse of its retail customer operating stores in Pennsylvania.[33]

4E Brands' direct shipments of products to a retailer's Pennsylvania warehouse constitutes a deliberate targeting of Pennsylvania.[34]

> **B.     The Avicollis' claims are related to 4E Brands' Pennsylvania contacts for jurisdictional purposes.**

4E Brands next argues the Avicollis' claims are not connected to these direct shipments into Pennsylvania because the Avicollis purchased the hand sanitizer from BJ's rather than from a Wakefern grocery store like ShopRite. We disagree.

For litigation to "arise from or relate to" a defendant's contacts with a state, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"³⁵ Two months after *Western Power*, the Supreme Court in *Ford Motor Company v. Montana Eighth Judicial District Court* clarified this prong can be met without proof the plaintiff's claims "came about because of the defendant's in-state conduct."³⁶ The Court in *Ford Motor* concluded a sufficient causal connection between claims arising out of car accidents involving a Ford Explorer and Crown Victoria and Ford's contacts with the forum states because Ford had advertised, sold, and serviced those car models in both states.³⁷ In so concluding, the Court expressly rejected Ford's argument that, for a causal connection to exist, the specific cars involved in the accidents must have been sold in the forum states.³⁸

The Court's analysis in *Ford Motor* applies to 4E Brands' relatedness argument. 4E Brands shipped the same product (seventeen-ounce bottles of Blumen Clear Advanced hand sanitizer) which allegedly caused the Avicollis' injuries into Pennsylvania. 4E Brands shipped substantial amounts of hand sanitizer into Pennsylvania during the same short period of time (at the beginning of COVID-19 mitigation) as the Avicollis' purchase. This creates a sufficiently strong relationship between 4E Brands, Pennsylvania, and this litigation to exercise specific jurisdiction.³⁹

### C. The exercise of specific jurisdiction over 4E Brands comports with traditional notions of fair play and substantial justice.

Having concluded the first two prongs are satisfied, we must now determine whether jurisdiction in this forum would be reasonable.[40] To determine reasonableness, we consider "(1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; (5) and the shared interest of the several States in furthering substantive social policies."[41] "The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[42]

We cannot find compelling evidence – nor does 4E Brands cite any – demonstrating it would be unfair or unduly burdensome for 4E Brands to litigate this dispute in Pennsylvania. And Pennsylvania has a substantial interest in providing compensation to its residents – like the Avicollis – who were allegedly injured in Pennsylvania by products knowingly shipped into the state by 4E Brands.[43] The Avicollis' interest in obtaining relief in Pennsylvania similarly supports our exercise of jurisdiction. The final factors also weigh in favor of our exercise of jurisdiction; efficiency concerns support allowing the Avicollis to sue BJs and 4E Brands in a single action.[44]

### III.   Conclusion

We may exercise specific personal jurisdiction over 4E Brands based on evidence: (1) 4E Brands deliberately targeted the market in Pennsylvania by directly shipping products here; (2) the litigation is related to 4E Brands' contacts with Pennsylvania; and (3) our exercise of jurisdiction over 4E Brands would not be unfair or unduly burdensome. We deny 4E Brands' Motion to dismiss.

Case 2:21-cv-01119-MAK   Document 96   Filed 08/06/21   Page 10 of 13

---

[1] ECF Doc. No. 49 ¶ 14.

[2] *Id.* ¶¶ 17, 19, 25.

[3] *Id.* ¶¶ 30-31.

[4] *See generally id.* The Avicollis also sued 4E Global SAPI de CV, the Mexico-based manufacturer of the hand sanitizer and 4E Brands' parent company. *See* ECF Doc. No. 1-1. 4E Global moved to dismiss the claims against it, arguing we lacked personal jurisdiction over it. ECF Doc. No. 18. We agreed and dismissed the claims against 4E Global. ECF Doc. No. 46. We concluded 4E Global had not purposefully availed itself of doing business in Pennsylvania because it solely shipped its products from Mexico to 4E Brands' Texas facility. ECF Doc. No. 45 at 11-13. We further concluded, even assuming we could exercise personal jurisdiction over 4E Brands, the Avicollis failed to adduce sufficient evidence to assert jurisdiction over 4E Global under the alter ego theory. *Id.* at 8-11.

[5] *Id.* ¶ 9.

[6] ECF Doc. No. 74-2 at 143-45.

[7] *Id.* at 143.

[8] *Id.* at 144-45.

[9] *Id.*

[10] *Id.* at 91-95; ECF Doc. No. 52-2 at 4.

[11] ECF Doc. No. 90 at 4-13.

[12] ECF Doc. No. 90 at 4-13; *Store Locator - ShopRite*, Wakefern Food Corp, Inc., https://shop.shoprite.com/globaldata/ banner-pages/store-locator (last visited Aug. 6, 2021).

[13] *Who We Are*, Wakefern Food Corp, Inc., https://www2.wakefern.com/who-we-are/ (last visited Aug. 6, 2021).

[14] *Id.* at 15.

[15] *Id.*

[16] *Id.*

[17] Federal Rule of Civil Procedure 4(k) allows a federal court to exercise personal jurisdiction over a non-resident defendant to the extent provided by the law of the state in which the federal court sits. Fed. R. Civ. P. 4(k)(1)(A). We look to Pennsylvania's long-arm statute, which allows courts

10

in Pennsylvania to assert personal jurisdiction over non-resident defendants "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b). The Due Process Clause of the Constitution, in turn, requires non-resident defendants "have certain minimum contacts with [Pennsylvania] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Reynolds v. Turning Point Holding Co. LLC*, No. 19-01935, 2020 WL 953279, at *2 (E.D. Pa. Feb. 26, 2020) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

If a defendant challenges the exercise of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating personal jurisdiction exists. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). The plaintiff cannot rest on his pleadings alone and must instead present affidavits or other competent evidence of sufficient contact with the forum state. *United Healthcare Services, Inc. v. Cephalon, Inc.*, No. 17-555, 2018 WL 878766, at *1 (E.D. Pa. Feb. 13, 2018) (citing *De Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP*, No. 08-0533, 2008 WL 4822033, at *3 (E.D. Pa. Nov. 4, 2008)). "Such contacts must be established with 'reasonable particularity,' but need only amount to a prima facie case in favor of personal jurisdiction." *Aetna Inc. v. Insys Therapeutics, Inc.*, 324 F. Supp. 3d 541, 550 (E.D. Pa. 2018). If the plaintiff meets this burden, the defendant must then establish the presence of other considerations that would render jurisdiction unreasonable. *Id.* (citing *De Lage*, 2008 WL 4822033 at *3).

[18] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[19] *Id.* (citation and quotations omitted).

[20] *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009).

[21] *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

[22] *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007)).

[23] *Id.* (quoting *Burger King*, 471 U.S. at 476).

[24] *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, No. 16-665, 2017 WL 3129147, at *5 (E.D. Pa. July 24, 2017) (quoting *O'Connor*, 496 F.3d at 317).

[25] *See id.* (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011)).

[26] *Arch Ins. Co. v. Tech. Invs., LLC*, No. 15-1223, 2016 WL 1257618, at *6 (E.D. Pa. Mar. 31, 2016) (quoting *Renner v. Lanard Toys*, 33 F.3d 277, 282 (3d Cir. 1994)).

[27] *Id.*

―――――――――――――――――――

[28] *Id.*

[29] *Merced v. Gemstar Group, Inc.*, No. 10-3054, 2011 WL 5865964, at *4 (E.D. Pa. Nov. 22, 2011).

[30] ECF Doc. No. 74-2 at 87.

[31] 512 F. Supp. 3d 604 (W.D. Pa. 2021). We appreciate 4E Brands' counsel's vigorous analogy to *Western Power* as he represented the seller there as well. We rely on the facts found by Judge Wiegand and not on 4E Brands' counsel's recollection.

[32] *See Potts v. Marks Controls Corp.*, Nos. 94-6291 & 95-2562, 1995 WL 542396, at *3 (E.D. Pa. Sept. 7, 1995) ("[A]n elaborate system of distribution, alone, will not shield a manufacturer from liability.") (citing *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 285 (3d Cir.), *cert. denied*, 454 U.S. 1085 (1981)).

[33] *See One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc.*, 987 F. Supp. 317, 324 (D.N.J. 1997) (concluding defendant purposefully availed itself of doing business in New Jersey by admittedly shipping pet products to a distributor of pet supplies located in New Jersey because "[t]hat action was specifically directed towards New Jersey and was deliberately undertaken by [defendant] in response to a solicitation for its products").

[34] 4E Brands' awareness that some of its products would end up in Greenbrier's Pennsylvania distribution center, especially when considered with the deliberate acts it took to separate and designate these Pennsylvania-bound products, is further evidence of 4E Brands' deliberate targeting of Pennsylvania. *See Arch Ins. Co.*, 2016 WL 1257618 at *6 (discussing a defendant's knowledge of the distribution chain as relevant to the purposeful availment inquiry); *Potts,* 1995 WL 542396 at *3 (same).

[35] *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear*, 564 U.S. at 919).

[36] 141 S. Ct. 1017, 1026 (2021).

[37] *Id.* at 1026-28.

[38] *Id.* at 1026-27.

[39] *See id.* at 1028 (concluding a sufficiently strong connection existed between defendant's contacts and plaintiffs' claims because "[defendant] had systematically served a market in [the forum states] for the very vehicles that the plaintiffs alleged malfunctioned and injured them in those [s]tates").

[40] *See Merced*, 2011 WL 5865964 at *5 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)); *see also Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 100 (3d Cir. 2004).

12

---

[41] *Merced*, 2011 WL 5865964, at *5 (citing *World-Wide*, 444 U.S. at 292)).

[42] *O'Connor*, 496 F.3d at 324 (citations and quotations omitted).

[43] *See Merced*, 2011 WL 5865964 at *5.

[44] *Id.* (citing *Lapeire v. World–Wide Volkswagen Corp.,* 698 F.Supp. 95, 99 (E.D.Pa.1988)).